UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:14-CV-19-TBR-LLK

GARY PARKS     PLAINTIFF

v.

KENNY VINCENT, *et al.*     DEFENDANTS

**OPINION AND ORDER**

This matter comes before the Court on Defendants, Kenny Vincent and Livingston County, Kentucky's Motion to Compel Plaintiff to Submit to Independent Medical Examination (the "Motion") (Docket # 23). The Court must determine if Defendants can compel Plaintiff, Gary Parks ("Parks"), to travel to Lexington, Kentucky, and submit to one physical and one mental-health examination over the course of two consecutive days. The Court determines that good cause exists and grants Defendants' Motion. Furthermore, the Court finds the presence of a passive observer at the examinations inappropriate under the circumstances and denies Parks' request for one.

**The Good Cause Requirement**

When a party's mental or physical condition comes into controversy, the Court may order that party to submit to an examination. Fed. R. Civ. P. 35(a)(1). The Court may only order an examination on a motion for good cause on notice to all parties and the examinee. Fed. R. Civ. P. 35(a)(2)(A). This Court must only order the examinations "upon a discriminating application . . . of the limitations prescribed by the Rule." *Schlagenhauf v. Holder*, 379 U.S. 104, 121 (1964). Parks does not dispute the controversy or notice requirements, which this Court also finds satisfied. Parks does dispute the existence of good cause. Good cause presents a higher bar to clear than relevance and must be demonstrated affirmatively by the movant. *Id.* at 118.

1

Parks does not cite any law to support his position that good cause does not exist. He does argue that good cause requires that Defendants demonstrate their experts reviewed the medical records and then "articulat[ed] the necessity for another exam[,] if any exists." (Docket # 25, p. 2). The very existence of triable issues of fact as to Parks' condition provides the good cause for those experts to examine Parks. "A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379 U.S. at 119 (internal citation omitted). Parks sued Defendants on theories of negligence and intentional tort and asserted mental and physical injuries. Defendants not having any medical expert perform any prior examination, the pleadings alone satisfy both the "in controversy" and "good cause" requirements of Rule 35. By showing that potential battle of the experts exists as to Parks' condition, Defendants demonstrated their need rises above base relevance to the level of good cause.

Parks also argues that his prior treatment should defeat the Motion because Defendants caused his that treatment and the proposed examiners lack independence as "defense hired guns." (Docket # 25, p. 2). Financial ties speak to the credibility of a witness, not to admissibility. *See Duncan v. Upjohn Co.*, 155 F.R.D. 23, 26 (D. Conn. 1994). Parks may impeach Defendants' experts, but, absent a valid objection, this Court will not second guess Defendants' expert selection. *See id.* Compensation alone does not create a valid objection. The argument regarding prior treatment lacks merit because Rule 35 provides a means for an opposing party to secure expert testimony without relying another party's examinations. This "preserves the equal footing of the parties to evaluate the [p]laintiff's mental [and physical] state and to present their

evaluations to a [j]ury." *Tomlin v. Holecek*, 150 F.R.D. 628, 633 (D. Minn. 1993) (quoted in 155 F.R.D. at 25).

Only in instances when the moving party cannot gain any additional, relevant information from the examination, as compared to a review of the existing medical records, will good cause not exist. *See* 155 F.R.D. at 25 (citing *Schlagenhauf*, 379 U.S. at 118). The instant matter involves psychic and soft-tissue injuries. Defendants' experts would face a disadvantage if attempting to form their opinions from medical records alone. To provide competent, admissible testimony, they must have the opportunity to examine Parks. *See* Fed. R. Evid. 702(a) (requiring "sufficient facts or data" exist as the basis for expert testimony).

**The Burden of the Examination**

Parks argues that submitting to two examinations, on consecutive days in Lexington, Kentucky, unreasonably burdens to him. This Court has said before that Rule 35 "consigns to the sound discretion of the Court the terms and conditions of the physical or mental examination," including the time, place, manner, conditions, scope, and examiner. *Ford v. Am. River. Transp. Co.*, No. 5:11-CV-00094, 2012 WL 4049467, at *4 (W.D. Ky. Sept. 13, 2012) (mem.); *see also* Fed. R. Civ. P. 35(a). The Court finds the location and time, specifically duration, of the proposed examinations reasonable, especially in light of Defendants paying for Parks' expenses and the amount in controversy.

I. Location

Parks argues that Defendants can find an expert closer to Paducah. Parks' ease of locating treating physicians ignores the practical differences between patient care and expert testimony. Defendants' counsel states that she could not locate an expert who will conduct the type of

examination Defendants seek in the Paducah area. (Docket # 27, p. 5). The Court cannot adopt Parks' argument, which would grant him veto power over Defendants' expert selection.

Defendants selected experts in Lexington and this Court need only decide if compelling Parks to travel to Lexington presents an unreasonable burden. The distance from Parks' residence in Grand Rivers, Kentucky, to Lexington amounts to approximately 235 miles. The Court does not find this distance negligible, but also does not find it unreasonable. Defendants have taken steps to minimize the inconvenience of the examinations on Parks, including paying the costs of travel and scheduling the examinations as to prevent two trips for Parks. This Court previously compelled plaintiffs bringing suit in the Paducah Division to travel to Lexington for Rule 35 examinations. *E.g.*, *Ford*, 2012 WL 4049467, at *4. In *Ford*, this Court ordered a Plaintiff to travel from Hickman, Kentucky, to Lexington. *Id.* A drive from Hickman to Lexington exceeds that of Grand Rivers to Lexington by approximately 80 miles. The shorter trip in the instant case does not present an unreasonable burden because of the distance to travel.

The Court does not agree with Parks' suggestion that Defendants' experts travel to him. Medical experts must avoid traveling to examinees for a number of reasons, including the need to remain available to other patients, the need to see the examinee in the expert's own office with staff, equipment, and other resources close by, the practical reality that the price associated with the expert's time often exceeds that of the examinee, and the fact that forcing an expert to travel would serve as a disincentive for experts to offer opinion testimony, thus working a harm on the judicial system. Lexington provides a reasonable place for the examinations in the instant matter.

II. Duration

Parks argues that the length of the mental-health examination creates an undue burden, stating that the examination will reinvent "the wheel at the expense of Plaintiff's rights." (Docket

# 25, p. 3). Parks specifies only that he will "take some tests that he has already taken." *Id.* Dr. Allen, Defendants' mental-health expert's letter indicates that he cannot determine what tests he will administer before an in-person interview. He wrote that some examinees will complete the process before noon and only rarely after 4:00, lunch and rest breaks included. (Docket # 23-3).

Other courts found similar durations reasonable. *E.g.*, *Simonelli v. Univ. of Cal.-Berkeley*, No. C 02-1107 JL, 2007 WL 1655821, at *3 (N.D. Cal. June 4, 2007) (holding an eight-hour examination "a reasonable time frame"); *Schaeffer v. Sequoyah Trading & Transp.*, 273 F.R.D. 662, 664 (D. Kan. 2011) (allowing examination spanning two days). "[T]he interests of both parties in the examiner's arriving at an accurate diagnosis militates against setting an artificially short time limit . . . ." *Simonelli*, 2007 WL 1655821, at *3. Dr. Allen explained the need for a one-day window to examine Parks. He, not the Court, holds expertise regarding the necessary evaluative procedures. Without evidence to the contrary or a compelling reason, this Court will not discount a his judgment when it appears reasonable on its face. To do so would "subvert the truth[-]finding function inherent in Rule 35 examinations." *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 196, 202 (N.D. Tex. 1995) (mem.). This Court finds an examination estimated to take one business day or less reasonable and not a source of an undue burden.

As Dr. Allen must reserve an entire business day, the Court finds scheduling examinations on two, consecutive days reasonable and minimally burdensome.

The Motion alleged that Parks requested more than $53 Million in damages. The Court finds Defendants' proposed examinations reasonable given the amount in controversy.

## The Presence of a Passive Observer

Parks requests the presence of a passive observer at the examinations because "[t]he rule allows for this" but cites no supporting caselaw. (Docket # 25, p. 3). Rule 35 does not address

5

observers, but leaves the manner of the examination to the ruling court's discretion. Fed. R. Civ. P. 35(a)(2)(B). Some courts have allowed third-parties attendance. *E.g.*, *Duncan*, 155 F.R.D. at 26 (citing examples allowing and disallowing third-party presence and ultimately denying the examinee's request). As Defendants admit, a third party may attend under the correct circumstances, which do not exist here.

Other courts have acknowledged their discretion to allow an observer but required special circumstances as justification, even for recording devices. *Stephan v. Trinity Trucking, LLC*, 275 F.R.D. 248, 250 (N.D. Ohio 2011); *Heffelfinger v. Connolly*, No. 3:06-CV-2823, 2008 WL 4417177, at *2 (N.D. Ohio Sept. 27, 2008). "[E]ach case must be reviewed on its own facts" without a presumption either way. *Galieti v. State Farm Mut. Ins. Co.*, 154 F.R.D. 262, 265 (D. Colo. 1994) (mem.). The burden of persuasion lies with the party seeking an observer, human or electronic. *See id.* In the instant case, the Court finds that Parks did not met his burden of demonstrating the existence of special circumstances.

Rule 35 examinations, while a part of the adversarial, civil-litigation system, should have a minimum of adversarial character. *See Warrick v. Brode*, 46 F.R.D. 427, 428 (D. Del. 1969); *see also* Richard J. Barnet, *Compulsory Medical Examinations under the Federal Rules*, 41 Va. L. Rev. 1059, 1073-74 (1955). The presence of a third party tends to reemphasize the adversarial nature of the overall proceeding and inject it into the examination, shifting the focus of the examination from fact gathering to interest preserving. *See Shirsat v. Mut. Pharm. Co.*, 169 F.R.D. 68, 71 (E.D. Penn. 1996); 46 F.R.D. at 428. The Court recognizes that a non-adversarial Rule 35 examination serves an ideal, practically unattainable in most cases, but must still minimize the adversarial nature of the examination to promote its truth-seeking function.

Defendants' experts will not allow observers without special circumstances such as "substantial medical or intellectual problems." (Docket # 23-3). The experts refused to perform the examination with observers present otherwise. Defendants also argue that an observer's presence may interfere with standardized procedures and rapport or distract or influence Parks.

Parks questions the examiners' honesty in the absence of an observer, but examiners serve as officers of the court when performing Rule 35 examinations and become available to any party as a witness. *Pitcairn v. Perry*, 122 F.2d 881, 886 (8th Cir. 1941); *accord Warrick*, 46 F.R.D. at 427; *Dziwanoski*, 26 F.R.D. at 597. Other safeguards exist to protect Parks' interests. *See generally* William Scott Wyatt & Richard A. Bales, *The Presence of Third Parties at Rule 35 Examinations*, 71 Temp. L. Rev. 103, 124-25 (1998). Parks' counsel can depose, cross examine and attempt to impeach the experts. *See* Fed. R. Evid. 607; *Tirado v. Erosa*, 158 F.R.D. 294, 299 (S.D.N.Y. 1994); 26 F.R.D. at 598. He can review their examiner's report upon request. Fed. R. Civ. P. 26(a)(2), 35(b)(1); 26 F.R.D. at 598. He can also seek written discovery under other rules. Fed. R. Civ. P. 33, 34. Finally, Parks will be present at his own exams. *See* 26 F.R.D. at 598. Nothing about the briefing of this matter suggests he will be sedated or otherwise impaired in his own observational faculties. He can inform his attorney about what occurred during the examinations.

The potential for influence by the observer or device's mere presence remains. Parks could, "even unconsciously, . . . exaggerate or diminish his reactions to" the examination. *Holland v. U.S.*, 182 F.R.D. 493, 496 (D.S.C. 1998). Parks might "perceive the [observer] as critical to his case and fail to respond in a forthright manner." *Id.* Finally, Defendants did not observe Parks' experts or treating physicians' examinations. This may harm the equal footing Rule 35 seeks to create. *Id.*; *see also Tomlin*, 150 F.R.D. at 633. These concerns only become

7

enhanced in a mental-health examination when rapport and confidences become much more important to the success of the examination.

## Conclusions

Defendants demonstrated that Parks' physical and mental conditions are in controversy and moved the Court, for good cause and on notice to Parks, to order examination of both. The duration and location of the examinations requested are reasonable under the facts of the case, especially in light of the amount in controversy.

## Order

IT IS HEREBY ORDERED, pursuant to Rule 35(a) of the Federal Rules of Civil Procedure, that Defendants' Motion (Docket # 23) is granted. Parks will travel to Lexington, Kentucky, and submit to a physical examination by Dr. Michael Best on that day, stay overnight in Lexington, and submit to a mental-health examination by Dr. Timothy Allen on the next day. Each examination will occur in the office of the doctor performing the examination. The parties' counsel will consult with one another to agree on reasonable, consecutive dates. If the parties cannot agree to dates on or before, April 15, 2015, Defendants' counsel will contact this Court's chambers to request a teleconference. Defendants will reimburse Parks for his reasonable mileage incurred traveling to and from the appointments and for his reasonable lodging in Lexington.